1  Gene J. Stonebarger, State Bar No. 209461
   Richard D. Lambert, State Bar No. 251148
2  STONEBARGER LAW
   A Professional Corporation
3  75 Iron Point Circle, Suite 145
   Folsom, CA 95630
4  Telephone: (916) 235-7140
   Facsimile: (916) 235-7140
5
6  James R. Patterson, State Bar No. 211102
   Alisa A. Martin, State Bar No. 224037
7  HARRISON PATTERSON & O'CONNOR LLP
   402 West Broadway, 29th Floor
8  San Diego, CA 92101
   Telephone: (619) 756-6990
   Facsimile: (619) 756-6991
9
   Attorneys for Plaintiff and the Class
10

FILED    Paid

2011 FEB 15  P 2: 40

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. S.J. DIVISION

ADR

E-filing

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

**SAN JOSE DIVISION**

14

15  KEN POCHIS, on behalf of himself and all
    others similarly situated,              CASE NO.:
                                            CV 11-  0721   HRL
16                                          **CLASS ACTION**
                 Plaintiff,
17                                          **COMPLAINT FOR:**
                 vs.
18  ARPU, INC., a Delaware corporation;     1. **VIOL. OF RICO ACT;**
    MCAFEE, INC., a Delaware corporation; and  2. **VIOL. OF ELEC. FUNDS. TRANS. ACT;**
19  IOLO TECHNOLOGIES, LLC, a California    3. **VIOL. OF ELEC. COMMUN. PRIV. ACT;**
    Limited Liability Company; and DOES 1   4. **UNJUST ENRICHMENT**
20  through 50, inclusive,                   5. **MONEY HAD AND RECEIVED**
                                            6. **NEGLIGENT MISREPRESENTATIONS**
21                 Defendants.               7. **FRAUD**
                                            8. **FALSE ADVERTISING**
22                                          9. **CONVERSION**
                                            10. **VIOL. OF UNFAIR BUSINESS PRAC.**
23                                          11. **FOR VIOLATIONS OF INVASION OF**
                                                **PRIVACY – INTRUSION INTO PRIVATE**
24                                              **MATTERS**
                                            12. **COMMON LAW NEGLIGENCE**
25
                                            **[JURY TRIAL DEMANDED]**
26
27
28

STONEBARGER LAW
A Professional Corporation

-1-

STONEBARGER LAW
A Profesional Corporation

1   Plaintiff, on behalf of himself, and all others similarly situated, alleges upon personal

2   knowledge as to himself and his acts, and as to all other matters upon information and belief, as

3   follows:

4   **I.    NATURE OF THE ACTION**

5       1.      This is a class action brought against Defendants Arpu, Inc. ("Arpu"), McAfee,

6   Inc. ("McAfee") and IOLO Technologies, LLC ("IOLO") resulting from their unlawful and

7   deceptive conduct as it relates to consumers who purchase software from McAfee, have their

8   billing information transferred to Arpu and IOLO without their knowledge or consent, and are

9   subsequently billed for IOLO's products without their authorization.

10      2.      The catalyst to the above deceptive acts is Arpu, who has implemented within

11  McAfee's website a deceptive pop-up window which advertises a free trial subscription to

12  IOLO's software product and urge consumers to "Try It Now".  Consumers are mistakenly lead

13  to believe that there is no risk in agreeing to the trial period and that they would need to

14  affirmatively choose to purchase the product after the expiration of the 30-day period prior to

15  being billed for the product.  Unknown to consumers, however, is the fact that by agreeing to the

16  free 30-day trial of IOLO's product, their billing information has been transferred to Arpu who,

17  in turn, directly deducts the monthly subscription price of the product from the customer's

18  account.  In other words, consumers are never informed that by entering their billing information

19  to purchase one of McAfee's products, and agreeing to a free trial period, that their billing

20  information is being transferred to Arpu and IOLO who will then directly deduct funds from

21  their accounts.

22  **II.    JURISDICTION AND VENUE**

23      3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because,

24  on information and belief, the amount in controversy exceeds $5,000,000 exclusive of interests

25  and costs and this is a class action in which the parties are citizens of different states.  This Court

26  has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. §

27  1693m(g)(EFTA) and 18 U.S.C. §§2510, *et seq.* (ECPA).   This Court has supplemental

28  jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

STONEBARGER LAW
A Profesional Corporation

4.      Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action because this Court has personal jurisdiction over Defendants and a substantial amount of the events giving rise to the claim occurred in this District.

## III.      THE PARTIES

### Plaintiff Pochis

5.      Plaintiff Ken Pochis is an individual who at all times mentioned herein resides, and continues to reside, in the State of Florida. Plaintiff purchased McAfee software from its online store, had his billing information disclosed to Arpu and IOLO without authorization, and suffered unauthorized charges to his debit card by Arpu and IOLO.

### Defendant Arpu, Inc.

6.      Defendant Arpu, Inc., is a Delaware corporation with its headquarters and principle place of business located in Washington D.C.

7.      Arpu, Inc. is a company that, according to its website, places ads "enabl[ing] consumers to purchase products or services from an online ad with a single click, using credit card information already on file. Eliminating the need to enter billing info makes advertising with ARPU ads 500% more effective than traditional online advertising." Other text on the Arpu site indicates that Arpu ads can be more than 47 times as "effective" as other ads.  Arpu's site lists McAfee as one of its partners.

### Defendant McAfee, Inc.

8.      Defendant McAfee, Inc. is a Delaware corporation with its headquarters and principal place of business located in Santa Clara, California.  McAfee touts itself as the world's largest dedicated security technology company proclaiming that it delivers "proactive and proven solutions and services that help secure systems and networks around the world, allowing users to safely connect to the internet, browse and shop the web more securely."

### Defendant IOLO Technologies, LLC

9.      Defendant IOLO Technologies, LLC is a California corporation with its principal place of business located in Los Angeles, CA.  According to its website, IOLO "produces award-winning software that repairs, optimizes, and protects Windows computers."

STONEBARGER LAW
A Profesional Corporation

1 **Doe Defendants**

2     10.    Plaintiff is ignorant about the true names of Defendants sued as DOES 1 through

3 50, inclusive, and their wrongful conduct, and therefore sue these Defendants by fictitious

4 names. Plaintiff will seek Court leave to amend this complaint to allege their true names and

5 capacities when ascertained.

6     11.    Plaintiff alleges on information and belief that at all relevant times, DOES 1-50,

7 inclusive, were agents, servants, employees, representatives, partners, and related or affiliated

8 entities of Defendants, and in doing the things hereinafter mentioned, were acting in the course

9 and scope of their agency, employment, or retention with Defendants' permission, consent,

10 authority and ratification.

11 **Co-Conspirators**

12     12.    Defendants knowingly entered into an agreement, combination and conspiracy to

13 profit from unauthorized charges to Plaintiff's and the Class' debit and credit card accounts under

14 the guise that Plaintiff and the Class agreed to purchase a software product after a free trial

15 period. As alleged herein, Defendants agreed to jointly implement a system by which McAfee

16 customers would be prompted to try a free trial period of IOLO's System Mechanic product, to

17 only be unwittingly billed for the product after the trial period. Throughout the relevant time

18 period, Defendants were aware that consumers did not intend to enroll in any monthly program

19 and that consumers never were informed or consented to the transfer of their billing information

20 to Arpu or IOLO. Regardless, Defendants agreed to jointly promote this deceptive business

21 practice. Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting

22 both jointly and severally, committed or caused to be committed against Plaintiff a series of

23 unlawful and fraudulent acts, namely: making, or causing to made, unauthorized charges to

24 Plaintiff and the Class' credit and debit cards. These acts were all made in furtherance of an

25 agreement whereby defendants knowingly conspired with each other to generate unlawful

26 income at Plaintiff's and the Class' expense.

27 / / /

28 / / /

STONEBARGER LAW
A Profesional Corporation

**Defendants' Aiding and Abetting**

13.     At all times relevant, Defendants aided and abetted, encouraged and rendered substantial assistance to each other in breaching their obligations to Plaintiff and the Class. For example, McAfee aided and abetted and substantially assisted Arpu by, *inter alia*, allowing Arpu to place its software on its website advertising third party products that ultimately resulted in the transmission of Plaintiff's billing information to be intercepted by Arpu at the point of sale without authorization. Similarly, IOLO aided and abetted Arpu and McAfee by offering illusory free trial offerings of its programs at the point of sale, which led Plaintiff and Class members to believe that they faced no risk of unauthorized billing. In taking action, as particularized in greater detail herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, Defendants mutually acted with an awareness of the primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrongdoing.

**Defendant's Agency/Joint Venture Relationship**

14.     In addition to acting on their own behalf individually, Defendants, each of them, are and were acting as the agent, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in conspiracy with each other Defendant and within the course, scope and authority of that agency, service, employment, representation, joint venture, and conspiracy. Defendants' conduct was fully ratified by the other. Specifically, on information and belief, McAfee and IOLO partnered and contracted with Arpu explicitly to create, implement and promote a deceptive enterprise which preys upon unsuspecting consumers. Thus, the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the defendants.

**IV.     Defendants' Deceptive Business Practices**

15.     McAfee is a leading international provider of computer security software and services to consumers, businesses, and governments. McAfee claims on its website that it holds "the highest ethical standards," and that its "business relationships with customers... [are] built on

STONEBARGER LAW
A Profesional Corporation

a foundation of integrity and trust." It also claims, "McAfee creates best-of-breed computer security solutions that prevent intrusions on networks and protect computer systems from the next generation of blended attacks and threats." McAfee sells its security software products and services on its website, www.mcafee.com. When consumers buy these products directly from McAfee, however, a misleading pop-up display on the McAfee site leads them to unwittingly enroll in subscription based services offered by third parties including, IOLO. Specifically, after downloading the purchased software, consumers are asked whether they would like to enroll in a free, 30-day trial of another program such as System Mechanic. The pop-up further discloses that this free trial product operates in association with McAfee's programs. McAfee does not advise consumers that McAfee itself allows third parties to market products and services on McAfee's own website and that McAfee passes customer billing information to these third parties.

16. Arpu, Inc. is a company that, according to its website, places ads "enabl[ing] consumers to purchase products or services from an online ad with a single click, using credit card information already on file. Eliminating the need to enter billing info makes advertising with ARPU ads 500% more effective than traditional online advertising." Other text on the Arpu site indicates that Arpu ads can be more than 47 times as "effective" as other ads. Arpu's site lists McAfee as one of its partners.

17. According to Arpu, "McAfee partnered with Arpu in September 2007 with the goal of increasing their profitability by selling additional products to their customers. Now, whenever a McAfee customer completes a purchase on McAfee.com, an ad will appear for a related product or service. Interested customers can choose to subscribe to the product or service using the billing method just entered in their recent McAfee.com purchase. This convenience to the customer streamlines the purchase flow and increases the overall conversion rate."

18. The Arpu pop-up placed on McAfee's website appears immediately after a customer has completed his purchase of McAfee software, and immediately before the customer begins his download of McAfee software. The pop-up, mimicking the look of the other pages on the McAfee site, thanks the customer for purchasing McAfee software, and prompts McAfee's

customers to click a red button to "Try It Now." The pop-up contains no obvious visual cues or conspicuous text indicating that it is an advertisement for another product, or that clicking on "Try It Now" will lead not to the delivery of the McAfee product but rather to the purchase of a completely different product. Instead, all of the obvious visual cues suggest that "Try It Now" is a necessary step in downloading the McAfee software.

19.     Customers are deceived by the McAfee-Arpu pop-up and believe that they are simply completing a necessary step to download McAfee software after their purchase. But a single click on the deceptive pop-up causes the purchase of an unwanted product from IOLO, a sale made without the knowledge or authorization of customers, using credit/debit card billing information that they have entrusted solely to McAfee.

20.     Plaintiff is informed and believes, and on that basis alleges, that upon electronically transferring of the consumer's credit card or debit card billing information to Arpu, and Arpu's subsequent withdrawal of funds from a consumer's account, that both McAfee and IOLO receive an undisclosed fee or "kickback" from Arpu.

21.     The charges for IOLO's product - "System Mechanic" - are billed monthly and appear on credit/debit card statements as "TB * System Mechanic TB * System Mechan 202-4461821 DCU."

22.     The phone number 202-446-1821 rings to Arpu Inc. This phone number, however, is not staffed by live operators and instead plays a recording about Arpu; the recording provides no option for cancelling transactions or subscription services.

23.     Importantly, McAfee's sending of consumer billing information, Arpu and IOLO's receipt of such information, and McAfee's and IOLO's receipt of a fee for their respective conduct are done without the consumer ever being informed of: (i) the nature of the subscription services of which they have unknowingly been enrolled; (ii) the obligation to pay the recurring cost of the service; (iii) the terms and conditions of the subscription service; (iv) the identity of the billing party; and (v) the manner by which they may cancel the service. For these reasons, Plaintiff alleges that Defendants' practices, by structure and design are intended to, and do, deceive consumers.

STONEBARGER LAW
A Profesional Corporation

STONEBARGER LAW
A Profesional Corporation

**Defendants Intentionally Exploit Consumers' Reasonable Expectations**

24.     The key to Defendants' deception is the so called "data pass" method of passing customers' billing information directly from McAfee to Arpu and IOLO, through the use of Arpu's software, without requiring the customers to re-enter their credit or debit card information as a condition of enrollment.  Defendants know that requiring the re-entry of credit or debit card information would alert the consumer that they could be charged for something.  Harvard Business School Professor, Benjamin Edelman stated the consumers rely on the request of billing information as notice that they may incur financial obligations:

> Consumers rely on the process of providing a credit card number as a barrier to unexpected charges.  Users rightly expect that by clicking from site to site, button to button, they do not incur financial obligation.  This expectation is part of what makes the web fun, flexible, and low-risk:  Users believe they cannot incur financial obligations except by typing their credit card numbers, and users expect to be able to cancel an unwanted transaction if a site requests a credit card number that a user does not care to provide.

**United States Senate Committee Investigating  Date Pass Business Practices**

25.     In May 2009, Senator John D. Rockefeller IV, Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation launched an investigation into deceptive e-commerce marketing practices.  The investigation specifically targeted marketing companies, similar to Arpu, as well as hundreds of online websites and retailers that partner with the companies.

26.     The Office of Oversight and Investigations, Majority Staff, released a preliminary report on November 16, 2009 ("Preliminary Report") after reviewing 300,000 pages of documents, and interviewing numerous witnesses and experts in e-commerce marketing.  The Preliminary Report confirms that Defendant's conduct is nothing more than a "highly aggressive sales tactics to charge millions of American consumers for services the consumers do not want and do not understand they have purchased."

> These tactics involve selling unfamiliar membership programs to consumers who are in the process of purchasing familiar products offered by trusted websites…. [C]ompanies gain access to online consumers by entering into financial agreements with reputable online websites and retailers.  In exchange for "bounties" and other payments, reputable on-line retailers agree to let [the companies] sell club memberships to consumers as they are

STONEBARGER LAW
A Profesional Corporation

in the process of buying movie tickets, plane tickets, or other online goods and services. The sales tactics used by these [companies] exploit consumers' expectations about the online 'checkout' process.

With the cooperation of their online 'partners,' [companies] insert their sales offers into the 'post-transaction' phase of an online purchase, after consumers have made a purchase but before they have completed the sale confirmation process. These offers generally promise cash back rewards and appear to be related to the transaction the consumer is in the process of completing. Misleading 'Yes' and 'Continue' buttons cause consumers to reasonably think they are completing the original transaction, rather than entering into a new, ongoing financial relationship with a membership club operated by [an unrelated third party].

Even more misleading and confusing is the 'data pass' process [these companies] and their partners use to automatically transfer consumers' credit or debit card information from the familiar web seller to the third-party membership club. Passing consumers' billing information directly to the [third-party membership club], without requiring consumers to re-enter it, deprives consumers of notice that they are entering a new, ongoing financial relationship with an unfamiliar company. After a 30-day 'free trial' period, [the companies] begin charging the consumer a monthly fee of $10-$20 dollars until the consumer cancels the membership. (Exh. 1, Preliminary Report at i-ii.)

27. On May 19, 2010, the Oversight and Investigations, Majority Staff, released a Supplemental Report on aggressive sales tactics on the internet. The Supplemental Report sets forth the Committee's findings that companies, like Defendants, ultimate goal was not to provide services, but to charge consumers' credit cards for as many months as possible before consumers discovered their memberships and canceled them.

28. The Senate Committee determined that companies are well aware that automatically transferring consumers' billing information produces a dramatically higher "enrollment" rate because consumers do not realize that they are agreeing to a second financial obligation.

29. Another presentation considered by the Committee revealed that these companies were well aware that requiring the consumer to re-enter credit card information would hurt conversion and noted that "with data collection on the page [y]ou can expect at least 70% decrease in conversion."

/ / /

/ / /

## V.    Plaintiff's Experience With Defendants

30.    In or about May, 2009, Plaintiff purchased a McAfee security software program from McAfee's website for $44.95.    Plaintiff then proceeded to download his purchased software.  At the end of the downloading process, a pop-up appeared and inquired as to whether Plaintiff would like to try a free, 30-day trial of System Mechanic.  Plaintiff paid McAfee electronically through its website and used his debit card to conduct the purchase.

31.    Plaintiff, believing that System Mechanic was a McAfee product, and that by agreeing to download System Mechanic he would not be charged beyond expiration of the 30-day free trial period, clicked the "Try It Now" button and proceeded to download System Mechanic.

32.    Approximately 30-days after Plaintiff downloaded System Mechanic, Plaintiff noticed that the amount of $4.99 had been deducted from his checking account.  Specifically, Plaintiff's checking account statement lists the deduction as "TB * System Mechanic TB * System Mechan 202-4461821 DCU."

33.    After seeing this unauthorized deduction from his checking account, Plaintiff immediately contacted his bank who informed him that the money had been deducted by IOLO.  Thereafter, Plaintiff contacted McAfee and inquired as to how IOLO had his billing information, to which McAfee responded that it had no affiliation with IOLO or the System Mechanic programs, and that it would never had given his billing information to a third party.

34.    Subsequent to his discussion with McAfee, Plaintiff then attempted to call the number listed on his account statement - (202-446-1821) - in order to determine how it had received his billing information.  However, calling the number - which belongs to Arpu - listed on his checking account statement resulted in Plaintiff being passed through to a recorded message that directed him to email all inquiries.  Based on the foregoing, Plaintiff is informed and believes, and on that basis alleges, that Defendant Arpu directly bills consumers on behalf of IOLO.

35.    Ultimately, the only way Plaintiff was able to discontinue these monthly unauthorized charges was to cancel his debit card.  However, the initial billing to Plaintiff of

STONEBARGER LAW
A Profesional Corporation

STONEBARGER LAW
A Profesional Corporation

1   $4.99, which was deducted from his bank account, has never been refunded.

2   **VI.    PLAINTIFF'S CLASS ACTION ALLEGATIONS**

3       36.    **The Class**:   This lawsuit is brought on behalf of the following ascertainable

4   nationwide Class and Subclasses:

5       **The Class:** All persons residing in the United States who, during the four year period

6       preceding the date of filing of this Class Action Complaint, did not provide their credit

7       card, debit card, or billing information directly to Arpu but whose credit card, debit card,

8       or billing information was obtained by Arpu (herein referred to as the "Class").

9           **Subclass (1):**  All Class Members who purchased a product through McAfee's

10      website and whose credit or debit card billing information was transmitted to a third party

11      (herein referred to as the "Subclass 1").

12          **Subclass (2):**  All Class Members who had their credit card charged by Arpu

13      (herein referred to as the "Subclass 2").

14          **Subclass (3):**  All Class Members who had their debit card charged by Arpu

15      (herein referred to as the "Subclass 3").

16          **Subclass (4):**  All Class Members who had their credit card charged by IOLO

17      (herein referred to as the "Subclass 4").

18          **Subclass (5):**  All Class Members who had their debit card charged by IOLO

19      (herein referred to as the "Subclass 5").

20      37.    **Excluded from Class and Subclasses**:  Excluded from the Class and Subclasses

21  are defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any

22  entity in which defendants have a controlling interest, and the legal representatives, successors or

23  assigns of any such excluded persons or entities, and the attorneys for Plaintiff herein.  Also

24  excluded from the Class and Subclasses are any judges presiding over these proceedings and

25  their immediate family.

26      38.    **Numerosity**:  The members of the Class and Subclasses are so numerous that

27  joinder of all members is impracticable.   While the exact numbers of Class members are

28  unknown to Plaintiff at this time, Plaintiff is informed and believes that the Class and each of the

1   Subclasses consists of hundreds, if not thousands of individuals. Class members are readily

2   ascertainable through appropriate discovery from records maintained by defendants and their

3   agents.

4          39.    **Superiority**: A class action is superior to other available methods for the fair and

5   efficient adjudication of this controversy because joinder of all members is impracticable, the

6   likelihood of individual Class members prosecuting separate claims is remote and individual

7   members do not have a significant interest in individually controlling the prosecution of separate

8   actions. No difficulty will be encountered in this case's management to preclude maintenance as

9   a class action.

10         40.    **Common Questions of Law and Fact Predominate**: The questions of law and

11   fact common to the Class predominate over questions affecting only individuals. Among the

12   questions of law and fact common to the Class are:

13          **a.**   whether Defendants' conduct violates RICO;

14          **b.**   whether Class members' billing information was improperly transferred to

15               Arpu;

16          **c.**   whether Arpu intercepted Class members' billing information;

17          **d.**   whether Arpu unlawfully charged Plaintiff and Class members' credit or debit

18               cards;

19          **e.**   whether Defendants engaged in unfair or unlawful business practices;

20          **f.**   whether Defendants engaged in false advertising;

21          **g.**   whether Defendants made intentional or negligent misrepresentations;

22          **h.**   whether Defendants violated the Electronic Communications Privacy Act;

23          **i.**   whether Plaintiff and the Class are entitled to injunctive relief; and

24          **j.**   whether Plaintiff and the Class sustained damages and, if so, the proper

25               measure of those damages.

26         41.    **Typicality**: Plaintiff's claims are typical of other Class members' claims because

27   Plaintiff, like every other Class member, was exposed to virtually identical conduct.

28   / / /

STONEBARGER LAW
A Profesional Corporation

1    42.   **Adequacy**:  Plaintiff can fairly and adequately represent the Class' interests;

2  Plaintiff has no conflicts of interest with other Class members, and has retained counsel

3  competent and experienced in class action and complex civil litigation.

4

**FIRST CLAIM**
**For Violations of the Racketeering Influenced and Corrupt Organizations Act,**
**18 U.S.C. § 1962 *et seq.***
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

5

6

7    43.   Plaintiff refers to and incorporates by reference the above paragraphs as though

8  set forth fully herein.

9    44.   The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

10        It shall be unlawful for any persons employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or

11        foreign commerce, to conduct or participate, directly or indirectly, in the
conduct of such enterprise's affairs through a pattern of racketeering

12        activity or collection of unlawful debt. 18 U.S.C. § 1962(c).

13    45.   The relevant time period for Defendants' pattern of racketeering stems from at

14  least the year 2007, and continues to the filing of this RICO Class Action Complaint.

15    46.   Defendants, are and were at all times relevant to this action, RICO "persons"

16  within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

17  **The RICO Enterprise**

18    47.   Defendants' have used an association-in-fact "enterprise," within the meaning of

19  18 U.S.C. § 1961(4), to carry out their pattern of racketeering activity. This enterprise consists of

20  Arpu, McAfee, and IOLO and DOES 1-50 (herein the "Enterprise"). This Enterprise possessed

21  and continues to possess a common purpose and goal, a membership, organizational structure,

22  and ongoing relationships between each Defendant with sufficient longevity to permit and enable

23  pursuit of the Enterprise's purpose and long-term objective through a continuous course of

24  conduct that affected and continues to affect interstate and foreign commerce.

25    48.   The Enterprise exists separate and apart from its pattern of racketeering activity,

26  inasmuch as Defendants have multiple goals, not all of which are fraudulent. The lawful activity

27  engaged in by the Enterprise includes the production, design, creation, and sale of various

28  software programs for use on computers. But Defendants have, since at least 2007, used this

Enterprise to conduct the related acts of wire fraud comprising the pattern of racketeering.

49. Arpu is a "person" under the civil RICO statute because it knowingly and fraudulently conducted and participated in the conduct, the management and the operation of the Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Arpu engaged in such unlawful conduct by using the Enterprise to conduct lawful activities as well as to further its fraudulent scheme of causing false and misleading information to be disseminated to the general public by interstate wires that consists of its implementation of fraudulent and misleading pop-up windows on the websites of various online retailers, that cause consumer credit card, debit card, and billing information to be transferred and/or intercepted by Arpu without the consumers knowledge or consent. Arpu violated RICO and injured Plaintiff and Class Members in their business or property by reason of its conduct of the Enterprise to pursue gain by unlawful means: to maximize its gain and profit through a pattern and practice of misrepresentation and concealment of the true nature and consequences of a consumer's option to accept various free trial offers. As the direct, proximate and foreseeable result of this violative pattern and the harm it caused, Plaintiff and the Class have suffered injury to their property.

50. McAfee is a "person" under the civil RICO statute because it knowingly and fraudulently conducted and participated in the conduct, the management and the operation of the Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). McAfee engaged in such unlawful conduct by using the Enterprise to conduct lawful activities as well as to further its fraudulent scheme of causing false and misleading information to be disseminated to the general public by interstate wires that consists of its agreement, acceptance, and/or acquiescence to allow Arpu to implement fraudulent and misleading pop-up windows on its website that causes consumer credit card, debit card, and billing information to be transferred and/or intercepted by Arpu without the consumers knowledge or consent. McAfee violated RICO and injured Plaintiff and Class Members in their business or property by reason of its conduct of the Enterprise to pursue gain by unlawful means: to maximize its gain and profit through a pattern and practice of misrepresentation and

STONEBARGER LAW
A Profesional Corporation

concealment of the true nature and consequences of a consumer's option to accept various free trial offers that are advertised on its website. As the direct, proximate and foreseeable result of this violative pattern and the harm it caused, Plaintiff and the Class have suffered injury to their property.

51.     IOLO is a "person" under the civil RICO statute because it knowingly and fraudulently conducted and participated in the conduct, the management and the operation of the Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  IOLO engaged in such unlawful conduct by using the Enterprise to conduct lawful activities as well as to further its fraudulent scheme of causing false and misleading information to be disseminated to the general public by interstate wires that consists of use of Arpu's fraudulent and misleading pop-up windows on the websites of various online retailers to advertise its products to consumers, with the knowledge that the consumer's acceptance to a free trial of any such program would result in the consumer's credit card, debit card, and billing information to be transferred and/or intercepted by Arpu without the consumers knowledge or consent. IOLO violated RICO and injured Plaintiff and Class Members in their business or property by reason of its conduct of the Enterprise to pursue gain by unlawful means: to maximize its gain and profit through a pattern and practice of misrepresentation and concealment of the true nature and consequences of a consumer's option to accept various free trial offers. As the direct, proximate and foreseeable result of this violative pattern and the harm it caused, Plaintiff and the Class have suffered injury to their property.

**The RICO Predicate Acts**

52.     Defendants engaged in a fraudulent scheme to defraud the general public into believing that accepting the invitation to try the free, 30-day trial subscription is risk-free, as they have not affirmatively agreed to the purchase of any product, committed to pay for any such program at the end of the free trial period or provided their respective debit card, credit card, or billing information to any third party.

53.     For the purpose of devising and carrying out this scheme and artifice to defraud the general public by means of false and fraudulent pretenses, representations, omissions, and

STONEBARGER LAW
A Profesional Corporation

promises, Defendants caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds in violation of 18 U.S.C. § 1343.

**The Pattern Of Racketeering Activity**

54.     Defendants' previously alleged RICO predicate acts in furtherance of their scheme to defraud the general public constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous.  Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to defraud public into believing that accepting the invitation to try the free, 30-day trial subscription is risk-free, as they have not affirmatively agreed to the purchase of any product, committed to pay for any such program at the end of the free trial period or provided their respective debit card, credit card, or billing information to any third party.    This pattern of racketeering is separate from and distinct from the legitimate production, design, creation, and sale of various software programs for use on computers, of the Enterprise alleged herein.

55.     Defendants, and each of them, are associated with the Enterprise and did conduct or participate, directly or indirectly, in the management or operation of its conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c).

56.     Plaintiff has sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962.  As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff and the Class Members have suffered injury to their property.

**Relatedness And Continuity Of The Racketeering Activity**

57.     All of the predicate acts alleged above are related to the scheme of Defendants to deceive consumers into believing that accepting the invitation to try the free, 30-day trial subscription is risk-free, as they have not affirmatively agreed to the purchase of any product, committed to pay for any such program at the end of the free trial period or provided their respective debit card, credit card, or billing information to any third party.    The acts are all

STONEBARGER LAW
A Profesional Corporation

1  related to Defendants' premise that unsuspecting consumers are easy targets for profit and to

2  disclose the nature and consequences of Defendants' conduct would inherently reduce their

3  profits.

4      58.    Continuity is demonstrated by the predicate acts alleged above because the pattern

5  of racketeering involves multiple predicate acts and related predicate acts that have taken place

6  over many years.  These predicate acts in furtherance of its scheme illustrate a threat of

7  continued racketeering activity and evince that the predicate acts constitute the regular way that

8  Defendants conduct business.

9      59.    As a proximate result of the pattern of racketeering activity and RICO violations

10 engaged in by Defendants, Plaintiff and the Class Members have suffered injury to their business

11 and property.

12                       **SECOND CLAIM**
**For Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.***
13         **Brought by Plaintiff and All Members of Subclasses 3 and 5**
**Against All Defendants**
14

15     60.    Plaintiff refers to and incorporates by reference the above paragraphs as though

16 set forth fully herein.

17     61.    The Electronic Funds Transfer Act ("EFTA") provides a basic framework

18 establishing the rights, liabilities, and responsibilities of participants in an electronic fund

19 transfer system.  15 U.S.C. § 1693.  The primary objective of the EFTA "is the provision of

20 individual consumer rights." *Id.*

21     62.    Plaintiff and Class Members each maintained an "account" as that term is defined

22 in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

23     63.    Arpu and IOLO engaged in "unauthorized electronic funds transfers," as that term

24 is defined in 15 U.S.C. § 1693a(11), by debiting  the bank accounts of Plaintiff and Class

25 Members without their permission.

26     64.    The EFTA provides that "[a] preauthorized electronic fund transfer from a

27 consumer's account may be authorized by the consumer only in writing, and a copy of such

28 authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). "In case of

1  preauthorized transfers from a consumer's account to the same person which may vary in
2  amount...the designated payee shall, prior to each transfer, provide reasonable advance notice to
3  the consumer, in accordance with the regulations of the Board, of the amount to be transferred
4  and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

5      65.    The EFTA's implementing regulations, known as Regulation E and codified at 12
6  C.F.R. §§ 205 *et seq.,* provide: "Preauthorization electronic fund transfers from a consumer's
7  account may be authorized only by a writing signed or similarly authenticated by the consumer.
8  The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. §
9  205.1(d). According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's
10  requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot
11  be met by a payee's signing a written authorization on the consumer's behalf with only an oral
12  authorization from the consumer." Regulation E, Supp. I, Part 10(b), ¶ 3. When "a third-party
13  payee fails to obtain the authorization in writing or fails to give a copy to the consumer...it is the
14  third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

15      66.    Arpu and IOLO violated the EFTA because Arpu initiated electronic fund
16  transfers from Plaintiff's account on behalf of IOLO, as well as from the accounts of Class
17  Members, without obtaining prior written authorization. Plaintiff and Class Members provided
18  no information to Arpu or IOLO.

19      67.    Arpu and IOLO also failed to provide reasonable advance notice of the amount to
20  be transferred and the scheduled date of the transfer.

21      68.    McAfee rendered substantial assistance, aided and abetted, and conspired to allow
22  Arpu and IOLO to engage in unauthorized charges in violation of the EFTA by, among other
23  things, providing Arpu with Plaintiff's and Class Members' debit card number and billing
24  information despite direct notice and knowledge that Plaintiff and Class Members did not
25  knowingly authorize McAfee to provide this information to Arpu or IOLO to charge their debit
26  cards. McAfee further participated in designing and approved the design of the enrollment
27  process, which it knew was deceptive and misleading, with the sole intent to create a pretext to
28  improperly charge consumers debit cards. McAfee further partnered with Arpu and IOLO and

1   shared in the ill-gotten proceeds of the unlawful charges.

2       69.     Accordingly, under 15 U.S.C. § 1693m, Plaintiff and Class Members seek

3   damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other

4   further relief as the Court deems appropriate.

5                               **THIRD CLAIM**
    **For Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510**
6       **Brought by Plaintiff and All Members of the Class and Subclasses**
                          **Against All Defendants**
7

8       70.     Plaintiff refers to and incorporates by reference the above paragraphs as though

9   set forth fully herein.

10      71.     The Electronic Communications Privacy Act ("ECPA") seeks to protect

11  individuals from interception and monitoring of their electronic communications.  The ECPA

12  provides that liability may be imposed on any individual who "intentionally intercepts, endeavors

13  to intercept, or procures any person to intercept or endeavor to intercept, any wire, oral, or

14  electronic communication." 18 U.S.C. § 2511(1) (a).

15      72.     The transmission of data between Plaintiff's and Class Members' computers and

16  various internet websites constitutes "electronic communications" within the meaning of 18

17  U.S.C. § 2510.

18      73.     Arpu's software, as alleged herein, is intentionally designed to intercept these

19  electronic communications without Plaintiff's or Class Members' knowledge, consent or

20  authorization.  Specifically, Plaintiff and Class Members transmitted data from their computers

21  to McAfee, for the purpose of purchasing products from McAfee's website only.  While Plaintiff

22  and Class Members were in the process of transmitting this information, Arpu intercepted their

23  respective billing data without Plaintiff's knowledge or consent, and transferred it to IOLO.

24  Neither Arpu nor IOLO was a party to any communications between Plaintiff and Class

25  Members on one hand, and McAfee on the other, and thus should not have received any data sent

26  by Plaintiff or Class Members to McAfee.

27      74.     As described herein, Arpu and IOLO received Plaintiff's and the Class Members'

28  information for the purpose of committing a wrongful and unlawful act - to make and profit from

unauthorized charges to Plaintiff's and Class Members' accounts.

75.     McAfee rendered substantial assistance, aided and abetted, and conspired to allow Arpu and IOLO to unlawfully intercept Plaintiff's and Class Members' data despite having direct notice and knowledge said individual did not knowingly authorize McAfee to allow Arpu or IOLO to obtain this information, and that Arpu intended to use the intercepted data to charge their debit and credit cards on behalf of IOLO without Plaintiff's and Class Members' knowing consent. IOLO likewise participated in the design of the deceptive enrollment process, partnered with McAfee and Arpu, and shared in the ill gotten profits from the eventual unauthorized charges.

76.     Under 18 U.S.C. § 2520, Plaintiff and Class Members are entitled to preliminary, equitable and declaratory relief, in addition to statutory damages of the greater of $40,000 or $100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendants' profits obtained from the above described violations.

### FOURTH CLAIM
#### For Unjust Enrichment
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

77.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

78.     Defendants accessed and received payments from Plaintiff and Class Members' credit and debit card accounts without their legal consent and thus knowingly received a benefit from Plaintiff and Class Members.

79.     Defendants have no valid or legal basis to access and charge Plaintiff and Class Members' credit and debit cards for fees.

80.     Defendants received, and continue to receive, substantial fees by charging Plaintiff and Class Members' credit and debit card accounts and/or using Plaintiff's and Class Members' billing information to earn money for themselves.

81.     These fees, compensation, and/or profits constitute unjust enrichment for Defendants and must be disgorged.

82. Plaintiff and Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

83. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class Members have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefit conferred by Plaintiff and the Class Members.

84. Plaintiff and Class Members have no adequate remedy at law.

85. By billing Plaintiff's and Class Members' credit and debit accounts without their knowledge or authorization, Defendants received unearned financial gains and unjustly retained the financial gains at Plaintiff's and Class Members' expense.

86. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from its wrongful conduct as alleged herein.

87. As a result of this unjust enrichment, Plaintiff and Class Members seek damages in an amount sufficient to compensate them for their losses. These losses include the amount Defendants were unjustly enriched by the unauthorized charges to Plaintiff's and the Class Members' credit and debit cards and interest in amount to be proven at trial. Plaintiff and Class Members further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

**FIFTH CLAIM**
**Money Had & Received**
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

88. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

89. As a result of the conduct alleged herein, Defendants improperly received monies from Plaintiff and Class Members they were not legally entitled to receive.

90. Plaintiff and Class Members have a claim for improperly paid fees for various products, including System Mechanic.

91. Equity and good conscience requires that Defendants ought to pay over such additional monies, described above, to Plaintiff and Class Members.

STONEBARGER LAW
A Profesional Corporation

92. As a direct and proximate result of Defendants' inappropriate practices, Plaintiff and Class Members have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if Defendants had not improperly collected and retained the aforementioned fees.

**SIXTH CLAIM**
**For Negligent Misrepresentations**
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

93. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

94. As set forth below, McAfee through its joint venture with IOLO and Arpu represented to Plaintiff and Class Members that they would receive a free trial period of System Mechanic by clicking the "Try It Now" button at checkout. Defendants lured consumers by placing deceptive advertisements on its website offering free trial periods of a product without ever informing consumers that was the product was that of a third party and that by agreeing to the free trial period, their billing information would be utilized by a third party to charge them at the expiration of the trial period.

95. Defendants knew, or reasonably should have known that Plaintiff and Class Members would not agree to this free trial period of the product, if they knew that a third party would begin charging their debit and credit cards at the expiration of the free trial period.

96. Defendants' conduct resulted in unauthorized charges to Plaintiff's and Class Members' credit and debit cards for purported benefits that were never requested or provided.

97. Defendants' representations were false, and their omissions were material.

98. Defendants had no reasonable grounds for believing the representations set forth above to be true and for not being aware of the material omissions.

99. At the time of Defendants' representations and omissions, Plaintiff and Class Members were ignorant of the representations' falsity and were ignorant of the omitted and/or concealed facts. In reliance on these misrepresentations and without the benefit of the material omissions, Plaintiff and Class Members were damaged by unauthorized charges to their credit

1  and debit cards. Had Plaintiff and Class Members known the actual facts, they would have not

2  tried to obtain the seemingly complimentary coupon.

3      100.    Reliance on McAfee's representations and omissions was justified because

4  Plaintiff and Class Members had no reason to believe that unauthorized charges were going to be

5  made to their credit and debit accounts.

6      101.    Plaintiff and Class Members have been damaged by Defendants' negligent

7  misrepresentations in an amount to be proven at trial.

8  **SEVENTH CLAIM**<br>**For Fraudulent Misrepresentations/Omissions**

9  **Brought by Plaintiff and All Members of the Class and Subclasses**<br>**Against All Defendants**

10

11      102.    Plaintiff refers to and incorporates by reference the above paragraphs as though

12  set forth fully herein.

13      103.    Common law fraud is the making of a knowingly false representation or

14  concealment of a material fact with intent to deceive or induce reliance that causes justifiable

15  reliance and resulting damages. California Civil Code section 1710 defines deceit/fraud as

16  either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be

17  true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground

18  for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or

19  who gives information of other facts which are likely to mislead for want of communication of

20  that fact; or (4) a promise, made without any intention of performing it.

21      104.    As set forth previously, Defendants made numerous material misrepresentations

22  through its suggestions, assertions, and omissions.

23      105.    Defendants were, and continue to be, under a duty to Plaintiff and Class Members

24  to disclose these facts because:

25          **a.**  Defendants are in a superior position to know the truth about IOLO's enrollment

26                programs and the business practice of receiving billing through a data pass

27                system; and

28          **b.**  Defendants actively concealed from Plaintiff and Class Members the true nature

STONEBARGER LAW
A Profesional Corporation

STONEBARGER LAW
A Profesional Corporation

of IOLO's program and its true practices with respect to the use of billing information.

106. Defendants knew, or reasonably should have known, that Plaintiff and Class Members would rely on its material misrepresentations and omissions of fact. McAfee, with the assistance of Arpu, intentionally designed its website to deceive consumers and trick them into enrolling in the free trial period for IOLO's product and "authorizing" IOLO to charge their cards. Defendants' further knew that Plaintiff and Class Members would not have authorized Arpu or IOLO to charge their cards if they had been required to provide their complete credit or debit card information at the time of electing to "try" the product for the free trial period.

107. Plaintiff and Class Members relied on Defendants' misrepresentations and omissions and were damaged because unauthorized charges were made to their credit and debit accounts. Defendants thus reaped unearned financial gains from the unauthorized charges to Plaintiff's Class Members credit and debit cards. This conduct is unjust and unlawful and thus violates California Civil Code section 1710.

108. As a proximate result of Defendants' fraud, Plaintiff and Class Members have been damaged in an amount that was improperly charged to their credit and debit cards and all other resulting damages.

109. Plaintiff and Class Members are further informed and believe that Defendants' conduct was motivated by malice, fraud, and oppression, and was done intentionally and in conscious disregard of their rights. Punitive damages should be assessed against Defendants in an amount that would punish and deter Defendants from further engaging in fraud.

110. Plaintiff and Class Members demand judgment against Defendants for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

/ / /

/ / /

/ / /

/ / /

**EIGHTH CLAIM**
**For False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, et seq.**
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

111.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

112.    The Unfair Practices Act defines false advertising to include the making or dissemination of any statements concerning property or services that are untrue or misleading, and which are known, or should have been known, to be untrue or misleading.

113.    Defendants' acts, practices, misrepresentations and omissions as herein alleged are unlawful and amount to false advertising as set forth in California Business and Professions Code section 17500.

114.    Defendants' conduct constitutes fraudulent and false advertising because its practice is likely to mislead Plaintiff, the Class, and the general public.  Defendants intentionally designed the processes to be deceptive and misleading, and these practices actually deceived and misled thousands of consumers as determined by the United States Senate.

115.    Defendants' unlawful false advertising, as described herein, present a continuing threat to Plaintiff, Class Members, and the general public because Defendants continue to mishandle Plaintiffs and Class Members' billing information and continue to charge their credit and debit cards without authorization.  In addition, Defendants have been unjustly enriched by its conduct.  Plaintiff, Class Members, and the general public seek equitable relief because they have no other adequate remedy at law.  Absent equitable relief, Defendants are likely to continue to injure customers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings.

116.    Plaintiff and Class Members request that this Court issue preliminary and permanent injunctions against such acts and practices.  Additionally, Plaintiff and Class Members seek restitution and recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Defendants to pay Plaintiff's attorneys' fees and

1 litigation expenses.

**NINTH CLAIM**
**For Conversion**
**Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**

117.   Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

118.   Plaintiff and Class Members had a right to retain the moneys taken from their credit and debit accounts when they were billed for products in IOLO's program without authorization.  Plaintiff and Class Members also have a right of ownership and possession of their own billing information.

119.   Defendants wrongfully converted the funds fraudulently obtained as a result of being billed for products without authorization.  Defendants also wrongfully converted Plaintiff's and Class Members' billing information, which was provided for a limited purpose and used beyond the scope of what was authorized.

120.   Defendants touted the free trial as being risk-free and legitimate, and then used it as an excuse to bill Plaintiff's and Class Members' credit and debit cards without authorization. Defendants converted the funds it fraudulently obtained from Plaintiff and Class Members for their own use.

121.   As a result of this conversion, Plaintiff and Class Members were damaged because their credit and debit accounts were charged for unauthorized fees and monthly payments.

122.   Plaintiff and Class Members are entitled to damages in an amount sufficient to compensate them for their losses.  These losses include the amount Defendants were unjustly enriched by the unauthorized charges and interest in amount to be proven at trial.

123.   Plaintiff and Class Members demand judgment against Defendants for damages arising from their misconduct, along with pre-judgment interest, costs of suit and other relief this Court deems appropriate.   Because Defendants' acts were willful, wanton, malicious and oppressive, were undertaken with the intent to defraud, Plaintiff and Class Members' further

STONEBARGER LAW
A Profesional Corporation

1  demand an award of exemplary and punitive damages.

2  **TENTH CLAIM**
**For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
3  **Brought by Plaintiff and All Members of the Class and Subclasses**
**Against All Defendants**
4

5  124.    Plaintiff refers to and incorporates by reference the above paragraphs as though

6  set forth fully herein.

7  125.    The Unfair Competition Law, Business & Professions Code § 17200, *et seq.*

8  ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or

9  practice.  Unlawful business acts are those which are in violation of federal, state, county, or

10  municipal statutes or codes, common law, or federal and state regulations.

11  126.    Defendants' acts, practices, misrepresentations and omissions as herein alleged are

12  unlawful and violate the laws and statutes alleged herein, including California Civil Code §§

13  1710; California Business & Professions Code §§ 17500, and 18 U.S.C. §1343 18 U.S.C. §

14  1692; 15 U.S.C. § 1693; and 18 U.S.C. § 2510.

15  127.    Defendants' acts were fraudulent as set forth throughout.  And Plaintiff and Class

16  Members reasonably relied on Defendants' material misrepresentations and omissions.

17  ·128.    Defendants' conduct was unfair in violation of the UCL, because, *inter alia,* the

18  injury to Plaintiff and Class Members greatly outweighs any alleged countervailing benefit to

19  consumers or competition under all of the circumstances.

20  129.    Defendants' conduct was also unlawful, fraudulent, and unfair because the 'data

21  pass' process used by Defendants to divert billing information to Arpu and IOLO and bill

22  consumers for products without authorization violates both the generally-accepted norms of

23  online commerce and the credit card companies' rules for online transactions.

24  130.    As a direct and proximate cause of Defendants' violations of the UCL, Plaintiff

25  and Class Members suffered an injury in fact and have lost money because, among other things,

26  they have suffered unauthorized transmission or interception of their billing information and

27  unauthorized charges to their credit and debit cards.

28  / / /

131.    Defendants' unlawful, unfair and fraudulent business practices, as described herein, present a continuing threat to Plaintiff, Class Members, and the general public in that they continue to wrongfully obtain and mishandle consumer billing information, and continue to bill their credit and debit cards without authorization.  In addition, Defendants have been unjustly enriched as a result of their conduct.  Plaintiff and Class Members seek equitable relief because they have no other adequate remedy at law.  Absent equitable relief, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings.

132.    As a proximate result of Defendants' violation of the UCL, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and Class Members and/or disgorge their ill-gotten profits pursuant to Business & Professions Code § 17203.

133.    Plaintiff and Class Members demand judgment against Defendants McAfee and IOLO for injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the conduct alleged herein, along with interest, attorneys' fees and costs pursuant to, *inter alia*, Cal. Code  Civ. Proc. § 1021.5.

### ELEVENTH CLAIM
**For Violations of Invasion of Privacy – Intrusion Into Private Matters
Brought by Plaintiff and All Members of the Class and Subclasses
Against All Defendants**

134.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

135.    One who intentionally intrudes upon the solitude or seclusion of another or his private affairs or concerns is subject to liability for invasion of privacy.  The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff."  Taus v. Loftus, 40 Cal.4th 683, 725, 54 Cal. Rptr. 3d 775, 807-808 (2007) (quoting Shulman v. Group W Productions, Inc., 18 Cal.4th 200 (1998).

136.    Plaintiff and Class Members had reasonable expectations that their private payment and billing information would remain private from Arpu and IOLO when they entered

1   into transactions with McAfee. They certainly were not aware that McAfee would disclose their
2   billing information and billing addresses to Arpu who would, in turn, disclose it to IOLO.
3   McAfee did not disclose its intentions to share Plaintiff and Class Members' payment and billing
4   information with IOLO, and instead assured Plaintiff and Class Members that their private
5   payment and billing information would not be shared or disclosed without their informed
6   consent.

7       137.    McAfee assisted Arpu and IOLO in obtaining Plaintiff's and Class Members'
8   private billing information without their knowledge or consent. McAfee represented to its
9   customers that it would guard their private billing information and would not disclose this
10  information to anyone else absent informed authorization. But McAfee passed this information
11  on to IOLO, though the use of Arpu's software, without obtaining authorization to do so. The
12  manner in which Defendants invaded Plaintiff's and Class Members' privacy rights is highly
13  offensive to a reasonable person.

14      138.    As a proximate result of the above acts, Plaintiff's and Class Members' billing
15  information was used by Defendants for their own profit, all to the general damage in an amount
16  according to proof.

17      139.    Defendants are guilty of oppression, fraud, or malice by disclosing the
18  information in a willful and conscious disregard of Plaintiff's and Class Members' rights to
19  privacy.

20      140.    Unless and until enjoined, and restrained by order of this Court, Defendants'
21  wrongful conduct will continue to cause Plaintiff, Class Members, and the public great and
22  irreparable injury in that their private billing information maintained by Defendants can be
23  disclosed to others for profit and that unauthorized charged can be made to their credit and debit
24  card accounts. Plaintiff and Class Members have no adequate remedy at law for the injuries in
25  that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff, Class
26  Members, and the public.

27  / / /

28  / / /

STONEBARGER LAW
A Profesional Corporation

## TWELFTH CLAIM
### Common Law Negligence
### Brought by Plaintiff and All Members of the Class and Subclasses
### Against All Defendants

141.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

142.    Despite its representation and contractual obligation not to, McAfee negligently shared with Arpu and IOLO, and allowed Arpu to intercept, Plaintiff's and Class Members' confidential billing information without informed authorization.

143.    Defendants Arpu and IOLO negligently accepted and used Plaintiff's and Class Members' private billing information without their knowledge or consent.

144.    Defendants negligently utilized webpages and advertising that Defendants reasonably should have known, were confusing, misleading, and deceptive in format and substance.  As a result, Plaintiff and Class Members were billed for IOLO's products without their knowledge or informed consent.

145.    Defendants knew, or reasonably should have known that Plaintiff and Class Members did not want their private billing information passed to Arpu or IOLO; that they did not want to purchase IOLO products; and that they did not want Arpu or IOLO to bill them.

146.    But for Defendants' negligence, Plaintiff and Class Members would not have unauthorized charges on their credit and debit card bills, for a product that they did not intend to purchase.

147.    Plaintiff and Class Members have been damaged by Defendants' negligent conduct in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, the Class, and Subclasses pray for judgment against Defendants as follows:

A.    An order certifying the Class and any appropriate subclasses and designating Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.    That the Court preliminarily and permanently enjoin defendants from engaging in the conduct alleged herein;

C. Other injunctive and declaratory relief as may be appropriate;

D. Restitution and disgorgement of any ill-gotten profits from Defendants to the extent permitted by applicable law, together with interest thereon from the date of payment;

E. For statutory damages according to proof;

F. For general damages according to proof;

G. For special damages according to proof;

H. For exemplary or punitive damages;

I. A declaration that Defendants are financially responsible for notifying all Class members of the pendency of this action;

J. Reasonable costs and attorneys' fees;

K. Statutory pre-judgment interest; and

L. For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

148. Plaintiff, on behalf of himself and the Class members, demand a jury trial in this action for all of the claims so triable.

DATED: February 15, 2011　　　　　STONEBARGER LAW, APC

By: _____
　　Gene J. Stonebarger
　　Richard D. Lambert
　　Attorneys for Plaintiff and the Class

STONEBARGER LAW
A Professional Corporation