1  Daniel K. Slaughter (SBN 136725)
   Michael F. Donner (SBN 155944)
2  STEIN & LUBIN LLP
   Transamerica Pyramid
3  600 Montgomery Street, 14th Floor
   San Francisco, CA  94111
4  Telephone:    (415) 981-0550
   Facsimile:     (415) 981-4343
5  dslaughter@steinlubin.com
   mdonner@steinlubin.com
6

7  Attorneys for Defendant
   McAFEE, INC.
8  [Counsel for Defendants Arpu, Inc.
   and Iolo Technologies, LLC identified
9  on signature page]

10
                    UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12
                           SAN JOSE DIVISION
13

14

| MELISSA FERRINGTON and CHERYL SCHMIDT, | Case No.  CV-10-01455 LHK (HRL) |
|---|---|
| Plaintiffs, | **DEFENDANTS McAFEE, INC.'S, ARPU, INC.'S AND IOLO TECHNOLOGIES, LLC'S JOINT MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| MCAFEE, INC., | Complaint Filed: April 6, 2010 |
| Defendant. | Trial Date:       None |
|  | Judge:              Hon. Lucy H. Koh |
| KEN POCHIS, | Case No.  CV-11-0721 LHK (HRL) |
| Plaintiff, | Complaint Filed: February 16, 2011 |
| v. | Trial Date:       None |
|  | Judge:              Hon. Lucy H. Koh |
| ARPU, INC., MCAFEE, INC., and IOLO TECHNOLOGIES, LLC, | |
| Defendants. | |

51160035/493523v1                                         Case Nos. CV 10-1455-LHK; CV-11-0721 LHK
DEFENDANTS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL AND FACTUAL BACKGROUND ......................................................... 1

    A. The Procedural History of These Related Matters ................................................. 1

    B. Plaintiffs' Claims and Defendants' Defenses ......................................................... 2

        1. Plaintiffs' Claims ........................................................................................ 2

        2. Defendants' Defenses ................................................................................. 3

III. THE REVISED SETTLEMENT SHOULD BE FINALLY APPROVED ......................... 6

    A. The Terms of the Settlement ................................................................................... 6

    B. Reaction to Class Notice ......................................................................................... 7

IV. CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Churchill Village, LLC v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) ............................................................................................... 7

*Ford v. Hotwire, Inc.,*
  2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ..................................................................... 4

*In re VistaPrint Corp Marketing and Sales Practice Litigation,*
  2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ..................................................................... 4

*Lavie v. Proctor & Gamble Co.,*
  105 Cal. App. 4th 496 (2003) ............................................................................................... 4

**STATUTES**

15 U.S.C. § 1693 *et seq.* ............................................................................................................. 4, 5

18 U.S.C. § 1961 ............................................................................................................................. 5

18 U.S.C. § 1962 *et seq.* ................................................................................................................. 4

18 U.S.C. § 2510, *et seq.* ................................................................................................................ 4

California Business & Professions Code
  § 17200 *et seq.* ..................................................................................................................... 4

California Civil Code
  § 1750 *et seq.* ....................................................................................................................... 4

## I. INTRODUCTION

Defendants McAfee, Inc., Arpu, Inc. and Iolo Technologies, LLC ("Defendants") submit this memorandum in support of final approval of these related class actions. Defendants support final approval of the settlement and join with plaintiffs in requesting that the Court finally approve the settlement and enter Judgment in the form attached to the Settlement Agreement. These actions have been pending long enough and the settlement is generous to the Plaintiff Settlement Class, especially given the strength of their claims. Indeed, no class member has objected or opted out of the settlement, evidencing that the class believes it is proper and just.

Plaintiffs have made separate motions for attorneys' fees and incentive awards. Pursuant to the terms of the Settlement Agreement, Defendants do not oppose the request for attorneys' fees in the total amount of $350,000 for the Ferrington plaintiffs' counsel and in the total amount of $105,000 for the Pochis plaintiffs' counsel. Defendants also do not oppose the incentive awards agreed upon in the Settlement Agreement: $500 each to Plaintiffs Ferrington, Schmidt and Pochis and $250 each to Plaintiffs Hall and Bennett.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The Procedural History of These Related Matters

The *Ferrington* original complaint was filed on April 6, 2010. McAfee filed a motion to dismiss, resulting in dismissal of some claims. Thereafter, plaintiffs and McAfee exchanged extensive documents in formal discovery and McAfee answered interrogatories. Arpu provided information pursuant to plaintiffs' subpoena, and through McAfee. McAfee and Arpu provided yet more information in the context of settlement talks. From the beginning of the case McAfee made clear that Arpu would be a necessary party to any settlement, since it was the actual seller of the software at issue and had designed the ads plaintiffs challenged.

The *Pochis* complaint was filed on February 16, 2011 and ordered related to the *Ferrington* case on May 16, 2011. The *Pochis* complaint is based on the same factual allegations as the *Ferrington* matter, but included some additional legal claims. Pochis eventually served his suit on each of the Defendants, but never otherwise prosecuted the case. Indeed, Defendants have never answered the complaint in *Pochis*; the parties stipulated ten times to postponement of the

deadline to do so.  [*Pochis* Docket 5, 10, 11, 13, 17, 21, 22, 23, 24, 25.]

McAfee, Arpu and the Ferrington plaintiffs eventually reached an agreement on a settlement after mediating before Judge Ronald M. Sabraw (Ret.) at JAMS and engaging in extensive informal discussions.  Judge Sabraw also decided the amount of the fee request the *Ferrington* plaintiffs would present to the Court and that McAfee and Arpu would not oppose.  The parties to the *Pochis* action also engaged in separate informal settlement discussions and reached agreement on the principal terms of a settlement, but could not agree on an attorneys' fee.

The parties to the *Ferrington* action therefore presented their settlement to the Court, which approved it preliminarily over the objection of Pochis.  After notice to the class was provided, Pochis submitted the only objection to the settlement at the final approval hearing.  The Court denied final approval of the settlement on April 6, 2012.  [*Ferrington* Docket 118.]

All parties in both actions then engaged in informal settlement discussions to attempt to reach an agreement in both actions.  They reached agreement on all terms except the attorneys' fees, which were then mediated before Judge Koh, with all parties waiving their right to object to such mediation.  At the mediation, the parties reached an agreement on fees.  The Court preliminarily approved the settlement on February 15, 2013.

Pursuant to the terms of the revised settlement, Defendants provided a second notice to the class via email, publication and website and also provided a second notice to the Attorney General of the United States and of every state.  [*Ferrington* Docket 151].

**B.     Plaintiffs' Claims and Defendants' Defenses**

1.     *Plaintiffs' Claims*

Plaintiffs' actions challenge pop-up online display ads that appeared after plaintiffs purchased McAfee software via the internet. Plaintiffs say that the pop-up ads placed by Arpu on McAfee's site, many of which sold software provided by Iolo, "mislead" plaintiffs into clicking on the ads in the belief that doing so was merely another step in downloading the McAfee software they had already purchased.  They say that the terms of Arpu's offer and the software and other products that Arpu was selling were not sufficiently disclosed in Arpu's ad.  They say that they were never informed that, by accepting Arpu's offer by clicking on it, they would be

1  authorizing McAfee to release their billing information to Arpu, and that they would then be
2  charged monthly for the software Arpu sold. And they say that they had difficulty reaching Arpu
3  to cancel the offers they accepted.

4  Pochis adds allegations that he perhaps realized that he was agreeing to accept the
5  software Arpu was offering, and downloaded that software, but believed it was a free trial and
6  that he would not be charged for the software unless he separately provided payment information.

7  Plaintiffs make these claims on behalf of a class of United States consumers who
8  purchased software from McAfee, were presented with and accepted Arpu's pop-up offer and
9  were charged by Arpu after McAfee transferred their billing information to Arpu.

10    2.   *Defendants' Defenses*

11  If the litigation were to continue, Defendants would assert a number of defenses.
12  First, Arpu's ads are not misleading. The basic terms of Arpu's offer were provided in the ad in a
13  prominent circle at the top of the ad: "30 DAY FREE TRIAL only $4.95/month thereafter." The
14  "Try It Now" button plaintiffs clicked includes the statement, "using my McAfee billing info."
15  And at the bottom of the ad appears the statement: "By clicking 'Try It Now' you are agreeing to
16  share the payment information used in the preceding McAfee purchase with TRYandBUY,"
17  Arpu's trade name. The disclosure also links to Arpu's detailed Terms of Service and Privacy
18  Policy and informs the customer that she can avoid charges by cancelling within the 30-day trial
19  period.

20  Second, Plaintiffs affirmatively accepted the Arpu offer by clicking on the red
21  "Try It Now using my McAfee billing info" button. Thereafter, they viewed a separate "Thank
22  You" page instructing them to check their email. The email also informed plaintiffs that
23  TryandBuy would fulfill the order and it recited the terms of the offer again, and provided
24  download instructions. Thus, plaintiffs who actually downloaded the software (like Pochis)
25  necessarily saw – twice – the terms of the offer to which they agreed.

26  Third, plaintiffs' complaint concerning the transfer of their billing information is
27  vulnerable because each class member was required to affirmatively accept McAfee's license
28  agreement and privacy policy which apprised them that McAfee would allow third-party ads on

its site and would share billing information with those third parties when necessary to effectuate an accepted offer.

<u>Fourth</u>, the Court previously dismissed *Ferrington* plaintiffs' claim under the "unlawful" prong of the Unfair Competition Law, Cal. Bus, & Prof. Code § 17200 *et seq.*, ruling that neither the Lanham Act, nor any other of plaintiffs' asserted bases, could support that claim. Plaintiffs' "fraudulent" and "unfair" claims would also fail because the ads were not "likely to deceive" a reasonable consumer. *Lavie v. Proctor & Gamble Co.,* 105 Cal. App. 4th 496, 504-513 (2003) (rejecting "least sophisticated consumer" standard). The "readily available public information" outlined above and in the ads prevents a finding that consumers were deceived. See *Ford v. Hotwire, Inc.,* 2007 WL 6235779, *4 (S.D. Cal. Nov. 19, 2007); *In re VistaPrint Corp Marketing and Sales Practice Litigation,* 2009 WL 2884727, *6 (S.D. Tex. Aug. 31, 2009).

<u>Fifth</u>, *Ferrington* plaintiffs' claim under the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.,* was previously dismissed by the Court on the grounds that the CLRA does not cover software because it is an intangible, not a "good" or "service" within the meaning the statute. [*Ferrington* Docket 57 at 25-27.]

<u>Sixth</u>, *Ferrington* plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims, alleging that McAfee breached its End User License Agreement, are exceedingly weak. The EULA explicitly states that billing information may be used "for other purposes" with the consumer's permission and the acceptance of the Arpu ad was just that. The Court has already turned aside the implied covenant claim because there is an express contract covering the same subject. [*Ferrington* Docket 57 at 24.]

<u>Seventh</u>, *Pochis* plaintiffs' claims for violation of the RICO Act, 18 U.S.C. § 1962 *et seq.,* the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.,* the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.,* and a number of common law claims, are "relatively weak" as the Court has already noted. [*Ferrington* Docket 118 at 14.]. The EFTA claim carries "minimal" damages, cannot state a claim against McAfee (because the transfer was authorized), and does not apply to the vast majority of the class that used credit cards (as opposed to debit cards). [*Ferrington* Docket 118 at 15.]. In addition, McAfee is not subject to the EFTA

because it did not actually transfer any monies from plaintiffs; Arpu did that.  And the EFTA claim fails a more basic test; the statute carries a one-year statute of limitations and Pochis sued more than a year after discovering the charges in June 2009.  15 U.S.C. § 1693m(g); *Pochis* Complaint ¶¶30, 32.

Eighth, Pochis' other claims would carry no additional monetary relief beyond what might be available under the UCL claim, and they would all be more difficult, or impossible, to prove and more difficult to certify as a class. In particular, Pochis would have to establish the strict requirements for a RICO claim, including one of the specific predicate acts in 18 U.S.C. § 1961, and a pattern of racketeering activity.  He would have to fit under the ECPA, also known as the Federal Wiretapping Act.  Pochis' fraud and negligence theories require individualized reliance and are generally not provable on a class-wide basis.  And the Court has already held that there is no cause of action for unjust enrichment under California law. [*Ferrington* Docket 57 at 24.]

Finally, if the litigation were to continue, Defendants would oppose class certification, arguing that the 33 different Arpu ads consumers saw cannot all be adjudicated in one case.  Defendants would also argue that all members of the plaintiff class could not have been "mislead" in the same way since different class members would have different levels of experience with pop-up ads and more or less online "savvy," as well as different computers that display the ads in different ways.  In addition, individual consumers' admissions that they knowingly accepted the pop-up offers and are happy with the software, products and services they so acquired, as well as some consumers' ability to obtain a refund and/or download and use the software Arpu sold, indicate lack of predominance of common issues.

All of these defenses represent a serious risk to plaintiffs' recovery in this lawsuit, and argue in favor of settlement approval whereby class members who believe that they are legitimately aggrieved are entitled to significant relief without the need for proving in court liability or a right to monetary relief.

### III. THE REVISED SETTLEMENT SHOULD BE FINALLY APPROVED

#### A. The Terms of the Settlement

The settlement addresses all of plaintiffs' claims and provides essentially 100% recovery to class members who make claims. The A Benefit available to claiming class members is five dollars per month for each month a class member was charged by Arpu after accepting a pop-up ad, up to a limit of six months. The parties agreed to a flat five dollar benefit for administrative ease and so that class members would not have the burden of proving the actual amounts they paid. The vast majority of class members paid five dollars or less per month. Six months as a cut-off was chosen because the parties agreed that a class member who paid for that length of time without requesting a refund or otherwise investigating the charge was far more likely to have knowingly accepted the pop-up offer and therefore had no claim at all. Nevertheless, such a class member may make a claim for the first six months of payments, or may wait for the B Benefit.

As an alternative to those class members that prefer to receive software, rather than cash, the settlement also offers security software provided by McAfee. This option allows class members who paid Arpu for more than six months to realize an enhanced benefit over the cash option, since the one-year security software license available to such claimants lasts for one year and is valued at approximately $50, rather than the maximum $30 cash benefit.

Class members must make a claim to receive the A Benefit (either cash or Family Protection software). This recognizes that many class members knowingly accepted the Arpu offer and are happy with the software or other product they received and the subsequent charges. The claim form requires minimal proof – either a billing statement from a credit card company or the email address where Arpu sent confirmation of the acceptance, and a statement under penalty of perjury. The claims process includes oversight by plaintiffs' counsel and a dispute resolution procedure.

For the B Benefit, Defendants will send an email at the conclusion of the claims period to class members who either did not make an A Benefit claim or whose claim was denied. Class members who click on a link in the email will be taken to the Settlement Website, where

1  they may choose either a $20 certificate good on McAfee's site, or a $20 certificate good on
2  Iolo's site.

3      Class members who do not make a claim for the A Benefit and do not respond to
4  the B Benefit will receive nothing, but will still have their claims released in the settlement.

5      **B.**      **Reaction to Class Notice**

6      The reaction to the class notice is telling.  No Plaintiff Settlement Class Member
7  has opted out or objected to the settlement.  This is a good indication that no one believes that the
8  settlement is inadequate or inappropriate.  *See Churchill Village, LLC v. General Electric,* 361
9  F.3d 566, 577 (9th Cir. 2004).

10      It is clear that class members have received the notice.  Seventy claims have been
11  made since the notice of the revised settlement was provided.  In addition, approximately 2000
12  other Plaintiff Settlement Class Members will receive the benefits they previously requested in
13  connection with the prior settlement in the *Ferrington* action.  The approximate total that will be
14  paid out pursuant to the claims made thus far (the Claim Period ends thirty days after Final
15  Approval) is $45,000 in cash, and $25,000 in software benefits.  In addition, some Plaintiff
16  Settlement Class Members may respond to the B Benefit email and receive that benefit.

17  **IV.**      **CONCLUSION**

18      The proposed settlement is appropriate and more than fair.  Defendants
19  respectfully request that the Court grant final approval and enter judgment so that the benefits to
20  the Plaintiff Settlement Class may be distributed and the matter resolved, to the benefit of all
21  parties concerned.

22
23
24
25
26
27
28

| | | |
|---|---|---|
| Dated: May 30, 2013 | | STEIN & LUBIN LLP |
| | By: | /S/ Daniel K. Slaughter |
| | | Daniel K. Slaughter |
| | | Attorneys for defendant McAFEE, INC. |
| Dated: May 30, 2013 | | RIMON, P.C. |
| | By: | /S/ Scott R. Raber |
| | | Scott R. Raber |
| | | Attorneys for defendant ARPU, INC. |
| Dated: May 30, 2013 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By: | /S/ Shon Morgan |
| | | Shon Morgan |
| | | Attorneys for defendant IOLO TECHNOLOGIES, LLC |

# CERTIFICATE OF SERVICE

I, Catherine Montoya, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Transamerica Pyramid, 600 Montgomery Street, 14th Floor, San Francisco, California 94111. On May 30, 2013, I served a copy of the within document(s):

**DEFENDANTS McAFEE, INC.'S, ARPU, INC.'S AND IOLO TECHNOLOGIES, LLC'S JOINT MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

☒ (ELECTRONICALLY) by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) listed on the CM/ECF service list.

**POCHIS v. MCAFEE SERVICE LIST**

| | |
|---|---|
| Gene J. Stonebarger<br>STONEBARGER LAW<br>75 Iron Point Circle, Suite 145<br>Folsom, Ca 95630<br>Email: *gstonebarger@stonebargerlaw.com* | *Counsel for Plaintiff and the Class* |
| James R. Patterson<br>HARRISON PATTERSON & O'CONNOR<br>402 West Broadway, 29th Floor<br>San Diego, Ca 92101<br>Email: *jim@pattersonlawgroup.com* | *Counsel for Plaintiff and the Class* |

1 | **FERRINGTON v. MCAFEE SERVICE LIST**

| | |
|---|---|
| Gay Crosthwait Grunfeld<br>Shirley Huey<br>ROSEN, BIEN & GALVAN, LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, Ca 94104<br>Email: ggrunfeld@rbg-law.com<br>shuey@rbg-law.com | *Local Counsel for Plaintiffs* |
| Andrew N. Friedman<br>Victoria S. Nugent<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>1100 New York Ave., N.W., Suite 500 West<br>Washington, D.C. 20005<br>Email: vnugent@cohenmilstein.com<br>afriedman@cohenmilstein.com | *Counsel for Plaintiffs* |
| Matthew N. Metz<br>METS LAW GROUP, PLLC<br>701 Fifth Ave., Suite 7230<br>Seattle, Washington 98104<br>Email: matthew@metzlaw.net | *Counsel for Plaintiffs* |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 30, 2013, at San Francisco, California.

*/s/ Catherine Montoya*
Catherine Montoya

51160035/493523v1 | 1 | Case Nos. CV 10-1455-LHK; CV-11-0721 LHK
CERTIFICATE OF SERVICE